United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALISON M. ABELS,<br><br>   Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>   Defendants. | Case No.: 11-CV-208 YGR<br><br>**ORDER GRANTING MOTION OF DEFENDANTS BANK OF AMERICA, N.A. AND RECONTRUST TO DISMISS SECOND AMENDED COMPLAINT** |

Plaintiff Alison Abels ("Abels") brings this action against multiple defendants, including moving defendants Bank of America, N.A. ("BANA") and Recontrust (collectively, "Defendants"). The Court has previously granted motions to dismiss by these defendants, first on April 11, 2011, and then after the conclusion of a bankruptcy stay, on March 2, 2012, each time granting Abels leave to amend. Plaintiff filed her Second Amended Complaint on March 16, 2012. On April 5, 2012, Defendants filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) and 12(e). (Dkt. No. 75.)

The motion came on for hearing on May 15, 2012, Plaintiff Alison Abels appeared in *pro per*. Defendants appeared by John Pingel of Reed Smith, LLP.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** the motion without leave to amend.

## PROCEDURAL BACKGROUND

Plaintiff filed her original complaint on January 13, 2011.

On March 2, 2012, the Court issued an order granting in part the Motion of Defendants Bank of America N.A. and Recontrust. That order gave Abels 14 days to file an amended complaint, with Defendants' response due 14 days thereafter. Abels filed her Second Amended Complaint on March 16, 2012.

On April 5, 2012, Defendants filed the instant motion to dismiss. (Dkt. No. 75.) On that same day, April 5, 2012, Abels filed a document entitled "Non Response from Defendants' [sic] Bank of America, N.A. and Recon Trust [sic] to Plaintiff's Second Complaint" seeking an order from the Court that Defendants Bank of America, N.A. and Recontrust be ordered to answer the Second Amended Complaint. (Dkt. No. 70.) On April 20, 2012, Abels filed a document labeled in ECF as a response to the Motion to Dismiss which, in fact, was captioned as a Motion for Default Judgment as against BANA and Recontrust. (Dkt. 80.) Abels argued that Defendants' motion should not be considered because it was filed more than 14 days after service of the Second Amended Complaint. Abels argued that the Court should enter default judgments against BANA and Recontrust. Thereafter, on April 25, 2012, she filed an "Application for Order Shortening Time for Motion on Entry of Default Judgment Against Defendants Bank of America, N.A., Recon Trust Company, N.A., and Realtime Resolutions." (Dkt. No. 86.) By order issued April 27, 2012, the Court denied Plaintiff's application for order shortening time and the underlying requests for default judgment themselves. (Dkt. 87.) Plaintiff filed no response on the merits of the instant motion to dismiss, making only the procedural argument that default judgments should be entered. Plaintiff was permitted to make oral argument on the merits at the hearing.

**STANDARDS APPLICABLE TO THE MOTION**

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock. Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the minimal notice pleading requirements to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Specific facts are unnecessary - the statement need only give the defendant "fair notice of the claim and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

All allegations of material fact are taken as true. *Id.* at 94. However, legally conclusory statements not supported by actual factual allegations need not be accepted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff's obligation to set forth the basis for his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations and quotations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Iqbal*, 556 U.S. 679.

**DISCUSSION**

1. <u>Repleaded Claims that Were Previously Dismissed</u>

In her Second Amended Complaint ("SAC"), Abels re-pleaded several claims that the Court dismissed without leave to amend in prior orders: the second claim for breach of fiduciary duty; the fourth claim for breach of the covenant of good faith and fair dealing; the sixth claim under the Rosenthal Fair Debt Collection Practices Act; and the eighth claim for Real Estate Settlement

Procedures Act. Thus, the instant motion to dismiss these claims is GRANTED to the extent that the Second Amended Complaint attempted to re-state the claims against these Defendants.[1]

2.      Statute of Limitations Defense to the Remaining Claims

Defendants argue that Abels' claims all arise out of the origination of the loan in November 2006. Abels' complaint was not filed until January 13, 2011. Thus, under any limitations period applicable to the claims here (ranging from one to four years),[2] Abels' claims are time-barred. Abels previously argued that she could plead a basis for equitable estoppel to preclude Defendants from raising a statute of limitations defense, and was given leave to do so in her Second Amended Complaint. Defendants now argue that the new allegations are not sufficient establish equitable estoppel and that, even if those facts constituted a basis for equitable estoppel they occurred after the limitations period had run as to many of the claims. The Court takes each argument in turn.

A. Elements of Equitable Estoppel

"Equitable estoppel. . . comes into play only after the limitations period has run and addresses ... the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. [It] is wholly independent of the limitations period itself and takes its life ... from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice." *Lantzy v. Centex Homes*, 31 Cal.4th 363, 383 (2003) (internal citations and quotations omitted); *see also Atwater Elementary School Dist. v. Cal. Dep't of Gen.*

---

[1] Some of these claims continue to reference BANA and others simply refer to "defendants" generally. Whether the continued reference to BANA was inadvertent or not is unclear. What is abundantly clear, however, is that the claims have already been dismissed as to these defendants.

[2] The relevant statutes of limitations are: Cal. Code of Civ. Proc. §338 (fraud – three years), §337(1) (breach of written contract – four years); §339(1) (negligence – two years); Cal. Bus. & Prof. Code §17208 (unfair business practices – four years); 15 U.S.C. §1640(e) (TILA and HOEPA damages claims – one year); and 15 U.S.C. §1635(f) (TILA rescission claim – three years).

4

*Servs.*, 41 Cal.4th 227, 232 (2007).  "To create an equitable estoppel, it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss... Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense." *Atwater, supra,* 41 Cal.4th at 232-233 (internal quotations and citations omitted).  Bad faith or an intent to deceive is not necessary.  *See Jordan v. City of Sacramento,* 148 Cal.App.4th 1487, 1496 (2007).

"[F]our factors [are] generally required in order to establish a basis for equitable estoppel: '(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had the right to believe that it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury.'" *Doheny Park Terrace Homeowners Ass'n, Inc. v. Truck Ins. Exch.*, 132 Cal. App. 4th 1076, 1099 (2005) (quoting *Spray, Gould & Bowers v. Assoc. Int'l Ins. Co.* (1999) 71 Cal.App.4th 1260, 1268.)  A leading treatise interpreting the authorities on equitable estoppel has added a fifth factor: that the defendant's misrepresentation, by words or conduct, had some "*bearing on the necessity of bringing a timely suit*."  Rylaarsdam, et al., CAL. PRAC. GUIDE CIV. PRO. BEFORE TRIAL, STAT. OF LIMITATIONS, Ch. 7-B, § 7:20 (emphasis in original).  Another treatise formulates this element of equitable estoppel as a representation by defendant that if plaintiff relies on defendant's advice or conduct, she will suffer no loss.  *See* 3 Witkin, CALIFORNIA PROCEDURE, Actions, § 767, p. 1000 (5th ed., 2008) (*citing Laraway v. First Nat'l Bank of La Verne* (1940) 39 Cal.App.2d 718, 729 (defendants advised plaintiff that her losses due to buying low grade securities would be recouped if she continued to follow their advice)).

So, for instance, in *Doheny Park*, equitable estoppel was held to have been pleaded sufficiently where plaintiff homeowners' association relied on the insurance company's inspection and evaluation of earthquake damage to their property. *Doheny Park, supra,* 132 Cal.App.4th at 1096-97. The assessment by the insurer's expert was that the total damage was below the policy deductible, when in fact the damage was revealed to be beyond the deductible and the policy limits based upon a proper inspection. *Id.* The court held that the allegations were specific enough to plead a legal basis for precluding the insurer from raising a statute of limitations bar to the association's claims. *Id.* at 1098. Similarly, in *Lantzy*, the court held that a party could be equitably estopped to assert the statute of limitations as a defense to an action if a manufacturer that was potentially liable for a construction defect represented that all actionable damage had been or would be repaired, plaintiff relied on that representation in refraining from bringing suit, and the representation proved false after the limitations period expired. *Lantzy, supra,* 31 Cal.4th at 384; *see also Indus. Indem. Co. v. Indus. Acc. Comm'n*, 115 Cal. App. 2d 684, 689-92, (1953) ("[a]n insurer cannot hold out a hope of amicable adjustment of a claim and thus delay action against it, and then plead the delay caused by its own conduct as a defense to an action when brought.")

Based on these authorities, the question of equitable estoppel does not consider when plaintiff discovered the basis for her claim, but whether defendant led plaintiff to believe that the dispute or problem will be resolved without need for litigation. Thus, whether plaintiff knew or should have known the terms of her loan, the falsity of statements in her loan application, or any other allegedly misleading representations or failures to disclose earlier is not germane. The question instead is whether Abels has alleged facts to show that BANA made a representation, through words or conduct, bearing on the necessity of filing a suit. The gravamen of plaintiff's complaint is fraud in the inception of the original loan.

6

As support for her equitable estoppel argument, Abels alleges that she applied for a loan modification in December 2008 per the terms of a settlement between the California Attorney General's office and Countrywide Home Loans (SAC ¶87.)  When she inquired about the modification in February 2009 she was told by Countrywide (BANA's predecessor) that she was not qualified for a modification under the settlement, but that it would submit her for other available modification programs.  (SAC ¶88.)  She continued to pay on her loan and check back with Countrywide on the status of the modification. (SAC ¶89.)  Later, on March 6, 2009, she contacted Countrywide regarding the modification and informed the company that she was out on a disability leave and had reduced income.  (SAC ¶90.)  No facts are alleged about the interim period between March 2009 and February 2010.  Thereafter, in February 2010, BANA, as the successor to Countrywide, asked Abels for current income information for her pending modification application and she provided the requested documents.  (SAC ¶91.)  When the notice of default was filed by BANA on November 12, 2010, she realized "the representations by BANA were false."  (SAC ¶92.)  Abels further alleges that "Defendants fraudulently induced plaintiff to believe that a loan [modification] was an option. . . Plaintiff did not seek any legal advice or review of any of the original loan documents because Plaintiff had previous dealings with mortgage loans with Countrywide and had no reason or notice to suspect the loan until after the NOD. (SAC ¶93.)

The Second Amended Complaint does not state a basis to apply equitable estoppel.  The gravamen of Abels' complaint and alleged injury is that she was induced originally to enter into a predatory loan based upon false promises of a lower, fixed rate loan with no pre-payment penalty, but was really sold a predatory loan with unfavorable terms (*i.e.*, adjustable high interest loan, with a prepayment rider and an illegal negative amortization provision) that were hidden by Defendants' failure to provide required disclosures.  (SAC ¶ 36-46.)  Abels' allegations simply do not establish

any between link BANA's protracted modification discussions and Abels' failure to bring her claims concerning the original loan within the statute of limitations.[3]

The possibility of a loan modification is not alleged to have been offered by BANA as a "fix" for any of the problems of which Abels now complains. It is not alleged, nor does it seem likely, that a loan modification would have restored anything to her that she claims to have lost. While Abels alleges that BANA is responsible for Countrywide's conduct as its successor in interest, she does not allege that BANA was aware of any potentially actionable terms or conduct in connection with the loan origination. There is no allegation that Abels raised any concerns with BANA about the original loan's inception or terms other than to seek a loan modification. BANA is not alleged to have misled her about whether she should file any claims sooner or wait for a resolution with Defendants. Indeed, Abels alleges, albeit in a conclusory fashion, that she did not realize there was any fraud, deceit or misrepresentation *until* she began to prepare her complaint after receiving the Notice of Default, in November 2010. (SAC ¶ 85.)[4] These allegations are not enough to show that BANA was aware of the alleged injury to plaintiff, or that BANA was discussing loan modification so as to head off any complaints about the original loan.

In short, Plaintiff has not alleged that the loan modification had any bearing on when or whether she needed to bring a lawsuit. Although a loan modification might have prevented

---

[3] BANA's reading of the "bearing on the necessity to bring suit" issue is overly rigid. Abels does not necessarily have to allege misrepresentations directly related to litigation to establish equitable estoppel. Rather, Abels is required to allege a sufficient nexus between the misleading representations or conduct of BANA (*i.e.,* the drawn-out loan modification discussions) and her failure to bring her claims within the statute of limitations period.

[4] As the Court previously found, the allegations in regarding a basis for equitable tolling are insufficiently specific as to why it was that Abels could not have discovered the basis for her claims prior to the close of the statutory time period. *See* Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, Dkt. No. 61, at page 5.

foreclosure on the original loan, it would not have resolved the underlying claims of fraud in the inception of that loan.

Thus, Defendants are not precluded from raising the statute of limitations as a defense, and the claims arising out of the inception of the loan in November of 2006 were all time-barred by the date of the filing of the original complaint herein, January 11, 2011.[5]

## CONCLUSION

The motion to dismiss is **GRANTED**. No further leave to amend is granted as it is clear that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962).

The Second Amended Complaint is **DISMISSED** in its entirety with prejudice. Defendants shall prepare and submit a proposed form of judgment of dismissal.

**IT IS SO ORDERED.**

Date: May 31, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[5] Moreover, the statutes of limitations on the fifth, ninth and tenth claims, with one- and two-year time limits, appear to have run prior to the time Abels initiated any loan modification discussions in December of 2008.

9